UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

PRIVILEGE UNDERWRITERS )
RECIPROCAL EXCHANGE, )
)
    Plaintiff, )
) CASE No. 4:23-cv-00546-MTS
v. )
)
UPONOR, INC., )
)
    Defendant. )

## PLAINTIFF'S AMENDED COMPLAINT

COMES NOW, Plaintiff, Privilege Underwriters Reciprocal Exchange, and for its Amended Complaint against the Defendant, Uponor, Inc., and for its causes of action, respectfully shows the Court as follows:

## PARTIES

1.    Plaintiff, Privilege Underwriters Reciprocal Exchange ("Plaintiff" or "PURE"), is an unincorporated reciprocal inter-insurance exchange with individual members in all 50 states of the United States[1] with its principal place of business located at 44 South Broadway, Suite 301, White Plains, NY 10601-1743; and at all times material hereto was authorized to issue policies of insurance in the State of Oklahoma. At all times relevant hereto, PURE provided a homeowner's insurance policy that insured, amongst other things, the real property and personal belongings owned by its insured, Blake Murry, located at 1220 E. 21st Place, Tulsa, OK 73122 (the "Murry Home") and also provided coverage for claims of loss of use and/or additional living expenses. PURE has paid for this claim and now seeks to recover for those damages, and PURE is subrogated to the claims of its Insured to the extent of its payments.

---

[1] A reciprocal inter-insurance exchange is a type of unincorporated association. For diversity of citizenship purposes, PURE is considered a citizen of all states in which its members reside.

2.      Plaintiff's insured, Blake Murry (the "Insured"), is an individual that owns and resides at the Murry Home.

3.      Uponor, Inc. ("Defendant" or "Uponor") is an Illinois corporation with its principal place of business located at 5925 148th Street West, Apple Valley, Minnesota 55124. At all relevant times herein, Uponor designed, manufactured, marketed/advertised, sold and/or distributed Uponor AquaPEX® for use in residential water plumbing systems throughout the United States, both directly and indirectly, by and through their entities, employees, agents, predecessors-in-interest and/or other representatives. Defendant may be served through and by its agent for service of process as follows:

Uponor, Inc.
c/o Registered Agent:  National Registered Agents, Inc.
208 SO LaSalle Street, Ste. 814
Chicago, IL  60604-1101

## JURISDICTION AND VENUE

4.      At all times relevant to this lawsuit, Defendant was conducting business in Tulsa County, Oklahoma.

5.      The Court does not have diversity jurisdiction over this dispute because, under 28 U.S.C. § 1332(a)(1), the parties are not citizens of different states. The amount in controversy exceeds $75,000 exclusive of interest and costs.

6.      Venue is appropriate, as the events giving rise to the claim occurred, or a substantial part of the property that was damaged as a result of the incident is located in Tulsa County, Oklahoma.

## FACTS

7.      Plaintiff's insured experienced significant damage to his home due to defective AquaPEX® piping, manufactured by Uponor.

8.    Plaintiff's Insured purchased the Murry Home in 2021.

9.    The Murry Home was originally built by LaBella Homes and was substantially completed and listed for sale on December 5, 2013.

10.    Records obtained from the City of Tulsa indicate that the final plumbing inspection was completed on November 27, 2013.

11.    The Murry Home was originally constructed with Uponor AquaPEX® in the potable water plumbing system.

12.    On or about December 24, 2022, Plaintiff's Insured was walking into his living room when he noticed the wood floor was buckling and seemed moist.

13.    Plaintiff's Insured contacted a plumbing company who determined that there was a leak below the concrete slab in the living room on the south wall, in the wall partition separating the kitchen and living room.

14.    A section of the concrete slab was opened to reveal a ½-inch red Uponor AquaPEX® hot water pipe that was cracked, leaking, and clearly defective.

15.    Defendant designed, manufactured, advertised/marketed, distributed, and/or sold Uponor AquaPEX® for use in water plumbing systems throughout the United States, including but not limited to the Murry Home.

16.    Defendant has repeatedly represented that consumers should trust Defendant to provide the highest quality PEX tubing because the company has many years of industry experience and is an industry leader in the manufacture of PEX tubing.

17.    Defendant's sales catalog advertised that, *inter alia*, its Uponor AquaPEX® was the highest quality PEX tubing available.

18.     Contrary to these affirmative statements, as alleged herein, the Uponor AquaPEX® suffers from a major design defect in that it is inherently susceptible to chlorine degradation.

19.     Although, Uponor knew that its AquaPEX® product was susceptible to chlorine degradation which would affect the products durability and reliability, it nevertheless marketed and sold its product in the United States where almost all water utilities add either chlorine or chloramines to the water supply.

20.     The chlorine in the water inside AquaPEX® pipes causes the brittle oxidative failure of PEX which failure leads to sudden leakage, as was the case with the Murry Home.

21.     Uponor adds "sacrificial" antioxidants into its AquaPEX® piping manufacturing process knowing that it will not prevent chlorine degradation and oxidation, but simply delay the oxidation process.

22.     The longer the AquaPEX® piping is in service, the fewer antioxidants remain to combat the effects of chlorine on the AquaPEX® piping.

23.     Prior to sustaining damage to the Murry Home, Plaintiff's Insured neither knew nor should have known of any defect in the Uponor AquaPEX® pipes nor of the products' susceptibility to failure when used in areas where chlorine is added to the municipal or city water supply.

24.     Defendant failed to supply proper warnings regarding this product's unreasonable danger and/or to disclose this material information to Plaintiff's Insured.

25.     Before designing, manufacturing, advertising/marketing, distributing and/or selling Uponor AquaPEX®, Defendant failed to take appropriate steps to ensure that its products were safe, durable, and reliable for their intended and expected use.

26.     Defendant knew or should have known that Uponor AquaPEX® was not suitable for use within water plumbing systems that contain chlorinated water and that said design defects were capable of causing the damages alleged herein.

27.     Uponor AquaPEX® has caused damage to, and a failure of the plumbing system, which has, as a direct and proximate result of the aforementioned defects of Uponor AquaPEX®, caused substantial damage to the Murry Home.

28.     Plaintiff and its Insured have sustained damages that Defendant proximately caused by the use of its Uponor AquaPEX® in its Insured's home.

29.     Defendant's acts, omissions and/or misrepresentations associated with Uponor AquaPEX®, including its misrepresentations and non-disclosures about the product's design defects, which defects were the proximate cause of Plaintiff's Insured's damages.

30.     Plaintiff would further show that the distribution and sale of the Uponor AquaPEX® without supplying proper warnings to the purchasers and end users of the product created an unreasonable risk of harm which resulted in the loss described herein.

31.     At no time did the Defendant or any of its agents, dealers or other representatives inform Plaintiff's Insured of its acts, omissions and/or representations related to the manufacturing and design defects in Uponor AquaPEX®.

32.     The water loss caused significant damage to the Murry Home and personal property and contents, including household goods.

33.     Plaintiff's Insured also lost the use and enjoyment of the Murry Home while the damages were being repaired and incurred additional expenses as a result thereof.

## COUNT I – MANUFACTURER'S PRODUCTS LIABILITY

34.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

35.     Defendant Uponor was and is engaged in the business of design, production, manufacture, marketing, and sale of AquaPEX® pipes.

36.     Defendant Uponor designed, produced, manufactured, marketed, and sold the AquaPEX® pipes that caused the damage to Murry Home.

37.     The AquaPEX® pipes were sold in a defective condition that made them unreasonably dangerous for use in residential structures such as the Murry Home.

38.     The AquaPEX® pipes were expected to, and did, reach the Murry Home without material modification.

39.     Defendant Uponor created a substantial risk of harm for those reasonably expected to be affected by the AquaPEX® pipes, including Plaintiff's Insured, as a result of the defective condition.

40.     Prior to sustaining damage to their home, Plaintiff's Insured neither knew or should have known of any defect in the AquaPEX® pipes.

41.     Defendant Uponor failed to warn and/or provided inadequate warnings of the unreasonable dangers and hazards created by the AquaPEX® pipes, and such failure to warn or inadequate warnings rendered the AquaPEX® pipes defective and unreasonably dangerous.

42.     As a direct and proximate result of the defective conditions of the AquaPEX® pipes, Plaintiff's Insured has suffered and will continue to suffer grave injuries and damages to his property in and amount in excess of two hundred twenty thousand dollars ($220,000.00), exclusive of fees, costs, and interest.

## COUNT II – NEGLIGENCE

43.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

44.     Defendant Uponor was negligent and breached a duty of care owed to Plaintiff's Insured in the manufacturing of the AquaPEX® pipes by, inter alia:

  a.     Failing to make or cause to be made reasonable inspections to discover or correct defects in the AquaPEX® pipes, all of which were known to the Defendant, or which in the exercise of due care should have been known;

  b.     Failing to provide adequate safety precautions for the use of the AquaPEX® pipes and for the protection of properties in a position similar to that of Plaintiff;

  c.     Failing to post warnings and/or adequate warnings of the dangers presented by the installation and use of the AquaPEX® pipes.

45.     As a result of Defendant Uponor's negligence, the Murry Home suffered significant damage.

46.     The acts complained of herein were reasonably foreseeable by Defendant Uponor.

47.     As a direct and proximate result of the defective conditions of the AquaPEX® pipes, Plaintiff has suffered and will continue to suffer grave injuries and damages to his property in and amount in excess of two hundred twenty thousand dollars ($220,000.00), exclusive of fees, costs, and interest.

## DAMAGES

48.     As a direct and proximate cause of the Defendant's acts, as more fully described above, Plaintiff sustained economic damages for:

  a.     Repairing the dwelling;

      b.      Repairing or replacing all damaged personal property;

      c.      Alternative living expenses that were incurred while the Murry Home was being repaired;

      d.      Costs of Court; and

      e.      Judicial interest.

49.     Defendant is liable for Plaintiff's damages, which are in excess of the Court's minimum jurisdictional limits.

## JURY DEMAND

50.     Plaintiff respectfully requests that this Court empanel a lawful jury to try this case.

## FOR THE COURT ONLY, NOT TO BE READ TO THE JURY

51.     Notice is given to the Court and all parties concerned that this lawsuit is being brought and prosecuted by PURE pursuant to its subrogation rights with respect to payments it made to or on behalf of its Insured under a homeowners insurance policy, providing its Insured with property and casualty coverage (hereinafter "the Policy"). Pursuant to the Policy, PURE has expended an amount not less than two hundred twenty thousand dollars ($220,000.00) to date to repair and replace its Insured's real and personal property that was damaged and destroyed by the water damage.  PURE is subrogated to the rights of its Insured to the extent of its payments.

WHEREFORE, Plaintiff PURE seeks judgment against Defendant Uponor in an amount in excess of two hundred twenty thousand dollars ($220,000.00), for costs of this action, prejudgment interest at the highest legal rate, post-judgment interest at the highest legal rate, court costs, and punitive damages, and for such other and further relief, general or special, both at law and in equity, to which Plaintiff may show itself to be justly entitled.

Respectfully submitted,


 /s/ *Bruce F. Klein*
Bruce F. Klein
Oklahoma State Bar No. 11389
**BRUCE F. KLEIN, PLLC**
222 NW 13th Street
Oklahoma City, Oklahoma 73103
405-606-4448 (Telephone)
405-523-2108 (Facsimile)
bruce@bfkleinlaw.com

**ATTORNEY FOR PLAINTIFF**


**CERTIFICATE OF SERVICE**

I hereby certify that all parties of record have been served with a true and correct copy of the foregoing via the Federal Rules of Civil Procedure on this the 27th day of December 2023, as follows:

J. Mark McAlester – jmmcalester@fentonlaw.com
Fenton, Fenton, Smith, Reneau & Moon
211 N. Robinson, Ste. 800N
Oklahoma City, OK 73102
**ATTORNEYS FOR DEFENDANT**
**UPONOR NORTH AMERICA, INC.**

 /s/ *Bruce F. Klein*
Bruce F. Klein